# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ANTHONY V. CORDOVA,**

    Plaintiff,

    v.                                        **Case No. 19-CV-277**

**BRIAN FOSTER, et al.,**

    Defendants.

## ORDER

Plaintiff Anthony Cordova filed a lawsuit under 42 U.S.C. § 1983, alleging that the defendants violated his civil rights because he had to wait nearly seven months before receiving replacement eyeglasses. On September 18, 2020, the defendants filed a motion for summary judgment. (ECF No. 47.) That motion is fully briefed and ready for resolution.

A preliminary matter which the court must address is whether it should consider supplemental response materials filed by Cordova on January 11, 2021, after the defendants filed their reply in support of their motion. (ECF Nos. 77, 78.) On October 29, 2020, the court ordered Cordova to respond to the defendants' summary judgment motion by November 30, 2020. (ECF No. 58.) The court reminded Cordova that he was required to "respond to each of the defendants' proposed findings of fact by agreeing with each proposed fact or explaining why he disagrees with a particular proposed fact." (*Id.* at 5.) The court informed Cordova that "[i]f he does not indicate

one way or the other, the court will assume that he agrees with the proposed fact for purposes of deciding the defendants' motion for summary judgment." (*Id.* at 5.) Finally, the court cautioned Cordova that "failure to respond to the defendants' proposed findings of fact will result in the court accepting as them as true for purposes of summary judgment." (*Id.* at 6.)

Cordova responded to the defendants' motion on December 21, 2020, nearly a month after the deadline the court had set. (ECF Nos. 69, 70.) He filed a declaration and a document he titled, "Response to Defendants' Proposed Findings of Fact," which did not respond to the defendants' proposed findings of fact but instead appeared to respond to defendant Chrystal Meli's declaration. The defendants filed their reply a couple of weeks later, on January 4, 2021. (ECF No. 75.) In their reply they argued that, because Cordova had not responded to their proposed findings of fact, the court should "consider as undisputed any facts proposed by the Defendants that are properly supported with admissible evidence." (ECF No. 75 at 1-2.)

About a week later, on January 11, 2021, Cordova filed his supplemental materials, which included a response to the defendants' proposed findings of fact (ECF No. 77) and a second declaration (ECF No. 78). The defendants objected to these supplemental filings, pointing out that Cordova filed the documents without the court's permission and long after the November 30, 2020 deadline. (ECF No. 81.) The defendants assert that the court should not consider these filings because "[t]he Federal Rules of Civil Procedure and this Court's local rules do not allow for unending responses" and "allowing [Cordova] another kick at the cat…would be unfair to the

2

process and the Defendants." (*Id.* at 2.) Cordova did not respond to the defendants' arguments.

The court agrees that Cordova's supplemental filings are not allowed under the rules and that allowing him to circumvent the rules would be unfair to the defendants. The court acknowledges that Cordova is pro se, but he had ample notice of the rules' requirements and of the consequences of failing to follow those rules. (ECF No. 58 at 5-6.) Accordingly, the court will not consider the supplemental response materials Cordova filed on January 11, 2021. In addition, the court will consider as admitted any facts proposed by the defendants that are properly supported with admissible evidence. *See* Civil L. R. 56(b)(4); *Turner v. Cox*, 569 F. App'x 463, 467 (7th Cir. 2014) (finding that a court has discretion to enforce its local rules, even against a pro se litigant).

*1. Factual Background*

Cordova is an inmate who has most recently been confined at Waupun Correctional Institution since October 2015. (ECF No. 49 at ¶ 1.) At the relevant time, defendant Chrystal Meli was the health services manager and defendant Brian Foster was the warden at Waupun. (*Id.* at ¶¶ 2, 6.)

In September 2018 Cordova broke his eyeglasses. (ECF No. 49 at ¶ 8.) He submitted health service requests about his glasses on September 16 and 17, 2018. (*Id.* at ¶ 41.) At the time, around 230 inmates were on a nine-month waitlist to see the optometrist. (*Id.* at ¶¶ 22-23.) Although Waupun had been requesting a full-time optical provider for several months, at the time optical staff worked at Waupun only

3

about one day a month and were able to see only fifteen to twenty inmates per day. (*Id.* at ¶24-27.)

In his initial requests Cordova complained that his eyeglasses were broken, his prescription was set to expire in two days, and he could not read his school assignments. (ECF No. 49 at ¶¶ 42-43.) A few days later, on September 21, 2018, nursing staff placed a request for Cordova to see optometry. (*Id.* at ¶ 46.) Between October 4 and December 25, 2018, Cordova submitted ten requests about his eyeglasses. (*Id.* at ¶ 51.) He complained he could not complete legal work without his eyeglasses and asked why it was taking so long for him to see the optometrist. (*Id.* at ¶ 52.) Nursing staff generally responded that Cordova was on the waiting list and that the waiting list was long. (*Id.* at ¶ 54.)

Meli first learned about Cordova's need for new eyeglasses on January 7, 2019. (ECF No. 49 at ¶ 57.) That day Cordova submitted two health service requests asking for a magnifying glass so he could complete his legal work and read the Bible. (*Id.* at ¶ 58.) Meli responded that health services does not order magnifying glasses and informed him that he was on the waitlist to see an optometrist and would be called for an appointment. (*Id.* at ¶ 59.) That was Meli's only involvement in Cordova's efforts to get new glasses. (*Id.* at ¶ 71.) Another nurse also responded to Cordova and told him he was on the waitlist. (*Id.* at ¶ 60.) Cordova submitted another request later that month, again asserting that he could not complete his legal work or read his Bible. (*Id.* at ¶ 61.)

4

On February 1, 2019 Cordova submitted an interview and information request to Foster. (ECF No. 49 at ¶¶ 63-64.) He asked for the health services manager's name and complained that Foster had not responded to his January 4, 2019 request. (*Id.* at ¶ 64.) Foster responded the same day,. explaining that the health services manager was Meli and stating that he had not received Cordova's January 4 request. (*Id.* at ¶ 65.)

A couple of weeks later Cordova sent a second request to Foster. (ECF No. 49 at ¶ 66.) He asked Foster to approve of him using his release account funds to order prescription glasses. (*Id.*) He explained that it had been nearly six months since he first began asking for a new pair of glasses. (*Id.*) Foster responded the same day, explaining that release funds could not be used for that purpose. (*Id.* at ¶ 67.)

On March 14, 2019, an advance care provider (who is not a defendant) placed a referral to optometry for a routine follow-up with Cordova. (ECF No. 49 at ¶68.) Cordova met with an optometrist (who is not a defendant) a few days later, on March 19, 2019. (*Id.* at ¶ 69.) The optometrist updated Cordova's prescription and ordered him state-issued eyeglasses. (*Id.* at ¶ 69.) Cordova received the eyeglasses on April 1, 2019. (*Id.* at ¶ 70.)

2. *Legal Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home*

*Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

3. Analysis

"[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including. . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment. It asks: 1) "whether a plaintiff suffered from an objectively serious medical condition," and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)).

The Court of Appeals for the Seventh Circuit has "found the following circumstances to be indications that a prisoner has a serious medical need: The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (citations and internal question marks omitted).

6

The defendants argue that Cordova fails to present evidence establishing he suffered from an objectively serious medical condition. They note that Cordova never complained he was in pain, and the fact that he wrote numerous health service requests while he was on the waiting list to see an optometrist shows that he was able to read and write during that time period.

Whether Cordova was in pain is only one of several factors to be considered in determining whether he suffered from an objectively serious medical condition. Cordova consistently complained that, without new glasses, he was unable to complete his school and legal work and was unable to read his Bible. Thus, Cordova has presented evidence that he suffered from a condition that interfered with his daily activities. As such, a reasonable jury could conclude that he suffered from an objectively serious medical condition.

The next question is whether a reasonable jury could conclude that Meli and Foster were deliberately indifferent to Cordova's condition. Cordova does not assert that his condition was emergent or so serious that it demanded immediate attention. As defendants point out, he never complained that he was in pain, and he did not have a serious eye issue, such as an infection, a retinal detachment, glaucoma, or retinopathy, all of which may have required that he be prioritized over other inmates on the waitlist. (ECF No. 49 at ¶¶ 19-21.)

Instead, Cordova complains about the nearly seven-month delay before he was able to see an optometrist. Under § 1983, a defendant will be liable for damages only if she was personally responsible for the deprivation of a constitutional right.

7

*Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019). Thus, to survive summary judgment, Cordova had to present evidence showing that Meli and Foster were responsible for that delay. He has not done so.

Defendants explain that, once an inmate requests eye care, the scheduler places the inmate on the waitlist and makes an appointment with the optometrist once the inmate reaches the top of the waitlist. (ECF No. 49 at ¶13.) Appointments are based on the optical staff's schedules. (*Id.* at ¶15.) When Cordova made his request, the waitlist included around 230 inmates, which translated to a roughly nine-month waiting period. (*Id.* at ¶¶ 22-23). Meli and Foster declare under penalty of perjury that they had no control over the number of people on the waitlist, nor did they have control over the optical staff's schedules, how the waitlist was prioritized, or how many patients the optical staff would see every day. (ECF No. 49 at ¶¶ 18, 73.) Cordova presents no evidence to the contrary.

In his declaration Cordova makes vague assertions about Meli's duties and responsibilities as the health services manager and warden Foster's responsibility for inmates' welfare, suggesting that he believes that they should have done something to address the limited access inmates had to optometry services. But, again, Cordova presents no evidence that Meli or Foster had the authority or ability to remedy the short supply of optometry services the prison had available and could offer inmates. Further, defendants highlight that, even though they had no authority or responsibility to hire optical staff, efforts were made to address the shortage. For example, Waupun had been requesting a full-time optical provider for several months

when Cordova was added to the waitlist, and Meli informed the Bureau of Health Services of Waupun's need for additional optical providers.

In short, because Cordova presents no evidence suggesting that either defendant had control over the size or prioritization of the waitlist or had the authority to increase optical staff's hours at Waupun, no reasonable jury could conclude that the defendants were responsible for the seven-month delay Cordova endured before receiving new eyeglasses. Given their lack of responsibility for the deprivation about which Cordova complains, the defendants are entitled to summary judgment. *See Alexander v. Richter*, 756 F. App'x 611 614-15 (7th Cir. 2018) (holding that plaintiff could not establish defendants were deliberately indifferent with regard to deficiencies in optical department services because they lacked authority to increase optometrists' hours at the prison); *see also Burks v. Raemisch*, 555 F.3d 595, 595 (7th Cir. 2009) (holding that "[p]ublic officials do not have a free-floating obligation to put things to rights" and "no prisoner is entitled to insist that one employee do another's job").

*4. Conclusion*

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (ECF No. 47) is **GRANTED** and this case is **DISMISSED**. The clerk's office will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of

9

Appellate Procedure 3, 4. I may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. I may not extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 7th day of April, 2021.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge